MARY L. STANLEY and JOHN G. STANLEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stanley v. Commissioner
Docket No. 11448-78.
United States Tax Court
T.C. Memo 1980-217; 1980 Tax Ct. Memo LEXIS 369; 40 T.C.M. (CCH) 516; T.C.M. (RIA) 80217; June 24, 1980; as amended June 25, 1980 *369 Michele O. Heffernan, for the petitioners. William S. Miller, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined deficiencies of $4,740 and $4,286 in petitioners' Federal income taxes for the years 1975 and 1976, respectively. Concessions having been made, the issues remaining for decision are: [1] (1) whether petitioner Mary L. Stanley's activities with respect to the collection of glass novelties were engaged in for profit, and (2) if so, whether and to what extent, petitioners are entitled to deductions for depreciation and household maintenance expenses, in each of the taxable years at issue. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts, together with the accompanying exhibits, is incorporated *370 herein by this reference. Petitioners (hereinafter sometimes referred to as Mr. and Mrs. Stanley) resided in Buffalo, New York, at the time the petition herein was filed. Petitioners filed timely Federal income tax returns for the taxable years 1975 and 1976 with the Internal Revenue Service Center at Andover, Massachusetts. From 1969 through 1978, the major portion of petitioners' taxable income was derived from services rendered to Stanley Steel Service Corporation (hereinafter Stanley Steel) in which, during the years 1971 through 1976, petitioners owned 57.6 percent of the stock. Mr. Stanley was president of Stanley Steel from 1969 to 1973. Prior to 1971, Mrs. Stanley was a housewife and was not otherwise employed. In 1971, Mrs. Stanley became treasurer of Stanley Steel, and in 1973, because of Mr. Stanley's failing health, she also assumed the presidency of the corporation, a position which she still retains. Mrs. Stanley's responsibilities with the corporation increased significantly when she became its president and she began to spend approximately 30 to 35 hours per week on corporate business. Her schedule is flexible, however, and some weeks she spends fewer than 30 *371 hours working for Stanley Steel. As president, Mrs. Stanley performs all the duties of a chief executive officer. Petitioners' combined salaries from Stanley Steel ranged from $56,000 in 1971 to $89,604 in 1978, with the total amount increasing in every year and the amount earned by Mrs. Stanley increasing from zero in 1971 to $59,736 in 1978. Petitioners' net worth in 1969 was not less than $250,000 and ranged from $465,000 to $584,000 between 1974 and 1978, exclusive of the value of their interest in Stanley Steel. In 1969, when Mrs. Stanley was 51 years old and all but the youngest of her four children had gone off to college, she found that she had some spare time and money and began to acquire antique glass novelties. Glass novelty items included glass toys, barber bottles, milk glass, figural bottles, and glass novelty dishes. Mrs. Stanley also acquires glass marbles. She spends most of her free time on activities relating to her glass novelties collection. Mrs. Stanley had been interested in antiques since she was a child. Her parents and other relatives had collected antiques and she had accompanied them on trips to antique dealers in the Buffalo, New York, area. She *372 subscribed to various antique trade journals even before she began acquiring glass novelties. She decided to acquire glass novelties, rather than some other type of antiques, because they were within her price range and she believed that they would increase in value. Mrs. Stanley acquired 560 examples of glass novelties and marbles in 1969 and her permanent collection has been augmented in every succeeding year. The number of items in her permanent collection from 1969 through 1978 and their cost was as follows: Number of
End of
Glass Novelties
Number of
Year
(Except Marbles)
Marbles
Cost
1969
500
60
1970
800
100
$13,585.00
1971
1,203
200
19,486.00
1972
1,353
260
23,310.00
1973
1,574
320
29,656.00
1974
1,679
340
42,851.00
1975
1,970
350
55,254.00
1976
2,099
355
66,864.00
1977
2,197
359
74,635.00
1978
2,281
365
77,093.00 Mrs. Stanley's permanent glass novelty and marble collection is not held for resale in the ordinary course of her activities and does not include those items which she holds in inventory for resale. During the years 1970 through 1978, Mrs. Stanley had an inventory of items held for resale and made sales or trades in the following numbers: Beginning
Ending
Year
Inventory
Purchases
Sales/Trades
Inventory 1970
0
0
0
0
1971
0
0
0
0
1972
0
108
25
83
1973
83
47
103
27
1974
27
55
62
20
1975
20
35
43
12
1976
12
25
23
14
1977
14
30
19
25
1978
25
18
20
23
Mrs. *373 Stanley locates items she wishes to acquire in two ways. First, she sends out notices, illustrating items she wishes to acquire and items she is willing to sell or trade, to antique dealers on a mailing list compiled from names she has culled from trade journals. Second, she visits antique shows and shops throughout the United States. Mrs. Stanley adds to her collection through purchase or trade to increase its size, variety, and quality. She upgrades the quality of items in her permanent collection by replacing damaged items with ones of the same type in better conditions. She tries to acquire rare examples. More plentiful common examples are not easily resold regardless of price. She often has to buy entire collections, including duplicates of items she already has, just to acquire a rare item she wishes to have. The replaced items and duplicates make up her inventory of items held for resale or trade. In 1971, Mrs. Stanley wrote a book about her collection of glass novelties, called "A Century of Glass Toys," which was published by Forward's Color Productions, Inc. (hereinafter Forward) of Manchester, Vermont. The book is composed of photographs of glass novelties accompanied *374 by brief descriptions. Approximately 1,250 examples, all from her collection, are illustrated in this book. Forward had previously published five books with similar formats, two of which were published for sale in museum shops. Under the arrangements contemplated, and at least partially implemented, 6,000 books were to be published and sold for $10 each and Forward and Mrs. Stanley were to be equal partners, sharing production costs and profits after payment of a substantial percentage of the gross proceeds from sales to Forward to cover distribution costs. Originally, Mrs. Stanley's share of profits was estimated at approximately $2,500 (based on a $4.95 sale price) but was later revised upward to $5,000 (based on the $10 sale price). A dispute arose between Mrs. Stanley and Forward, primarily as the result of the numerous revisions required by Mrs. Stanley, that was finally settled in 1972 by the delivery of 622 books. Mrs. Stanley paid $6 a copy plus freight for some of the books and received the balance free of charge. Mrs. Stanley was able to purchase additional copies from Forward for $6 a copy plus freight. Petitioners received no payment from Forward attributable to *375 the sale of "A Century of Glass Toys" in the years 1971 through 1978. After 1972, Mrs. Stanley sold the book herself without a distributor. She advertised by mailing informative postcards to antique dealers and collectors of glass novelties and by placing advertisements in trade journals. Mrs. Stanley sold 637 copies of her book from 1971 to 1976 and gave away 26 as gifts. One hundred eighty of the 637 copies were sold for $6, plus postage i.e., the cost to Mrs. Stanley of acquiring additional copies. She sold some copies at $10 each. Mrs. Stanley's book differed from earlier books on the subject of glass novelties because it consisted of color photographs, rather than black and white sketches. Mr. Mattews, the author of one of those earlier books called "Antiquers of Glass Candy Containers," acknowledged Mrs. Stanley's assistance in his introduction because she had corresponded with him and sent him sketches of her collection. Mrs. Stanley was familiar with Mr. Matthews' books and two other books on glass candy containers at the time she published her own book, but did not know or inquire how many copies of those books had been sold or whether they had been financially successful. *376 In fact, Mr. Matthews published 250 copies of his first book, some of which he converted into an expanded second edition of which he made 100 copies, and 500 copies of his second book, some of which remain unsold. While Mrs. Stanley has considered publishing a supplement to "A Century of Glass Toys," as well as a book on barber bottles, she has taken no steps towards such publication, except a few preliminary inquiries made to photographers and a printer in 1973 through 1976. The publication of "A Century of Glass Toys" helped to establish Mrs. Stanley as an authority in the field of glass novelties and to attract attention to her collection. She enjoys the personal prestige attached to this reputation. She also believes that the marketability of her collection is augmented by her reputation as an authority. Mrs. Stanley wrote articles on candy containers and glass toys which were published in the "Antique Trader" and the "Tri-State Trader," national trade journals. Articles concerning Mrs. Stanley were published in the "Buffalo Evening News" and the Buffalo "Courier Express." The article from the "Courier Express" was reprinted in both of the above-mentioned trade journals. *377 A 1973 article in "Old Bottles Magazine" referred to Mrs. Stanley's collection as the largest one-of-a-kind collection in the United States. Mrs. Stanley derives great personal pleasure from her activities with respect to glass novelties. When Mrs. Stanley acquires a glass novelty, she assigns it a number, writes a detailed description of it, and lists the cost of acquisition. She also keeps records of sales of her book which, in most cases, specify date of purchase, name and address of purchaser, purchase price, and postage, if sent. Mrs. Stanley does not keep a separate bank account for the proceeds of sales of glass novelties or her book. She has a record of everyone with whom she has corresponded in regard to glass novelties, but she does not have a record of individuals who viewed her collection unless appointments were arranged by letter or such individuals purchased copies of her book from her. She does not have a separate listing in any telephone directory in regard to her glass novelty activities. Other than the records of acquisitions of novelties and sales of her book described above, Mrs. Stanley does not keep a separate set of books with respect to the expenses of *378 her glass novelty activities. In 1974, Mrs. Stanley insured her glass novelty collection to the extent of the items displayed in "A Century of Glass Toys" at their cost of $44,935. In 1975 and 1976, she raised the value of the same coverage to $89,861. In 1979, the insurance was the same both as to coverage and amount. Mrs. Stanley's collection was not independently appraised for insurance purposes in any year between 1969 and 1978. Petitioners reside in a three-story house in Buffalo, New York. Mrs. Stanley's glass collection is displayed throughout the house. The first floor contains eight rooms, including a large main entrance hall, an office, a living room, dining room, front sun porch, rear sun porch, and kitchen, all of which have glass novelties on display. One part of the hall provides access to the house, while the other part is a display area. The office is used exclusively for Mrs. Stanley's correspondence, writing, and other activities in connection with her collection and for displaying her collection. The dining room has a display case the length of one entire wall. On the second floor, there are four bedrooms and a study. The study is used exclusively for the *379 purpose of displaying glass novelties. Glass novelties are also displayed in one of the bedrooms. The third floor has three rooms, one of which contains a large desk, typewriter, and adding machine and is used exclusively in connection with Mrs. Stanley's glass novelty activities. The basement contains four rooms. The coal room is used exclusively for storage of glass novelties. Parts of the gym room and laundry room are also used to store glass novelties. Petitioners' house is zoned for residential use. Commercial activity is not permitted unless a variance or permit is obtained. Mrs. Stanley has not applied for or obtained such a permit or variance. Mrs. Stanley allows dealers in glass novelties, serious collectors, and other interested parties to view her collection by making an appointment in advance. In an average year, only a few dealers would view her collection. Members of bottle clubs, antique study groups, and a Smith College alumnae group have viewed the collection on guided lecture tours conducted by Mrs. Stanley. She shows her collection to such groups a few times each year. Her collection is not open for display to the public during established hours. Petitioner's *380 home is decorated with many valuable items of fine art, including furniture, antiques, and paintings, in addition to her glass novelty collection. The income and expenses from Mrs. Stanley's glass novelty activities reported on petitioners Federal income tax returns for 1971 (the first year of such reporting) through 1978 were as follows: Schedule of Losses from Mrs. Stanley's Glass Novelty Activities
1971
1972
1973
1974
SALES
Books
$1,660.00
$1,504.00
$ 746.00
$ 730.00
Novelties
0
1,263.00
2,355.00
1,078.00
Gross Sales
$1,660.00
$2,767.00
$3,101.00
$1,808.00
Cost of Goods Sold
(3,781.00)
(1,933.00)
(1,738.00)
(1,265.00)
Gross Profit
$ (2,121.00)
$ 834.00
$1,363.00
$ 543.00
Other Expenses
(7,560.00)
(6,419.00)
Dues and Subscriptions
(365.00)
(285.00)
(470.00)
Advertising
(1,355.00)
(662.00)
Postage
(1,329.00)
(732.00)
Photographic Materials
& Supplies
(620.00)
(191.00)
Automobile Expenses
Travel
(795.00)
(871.00)
Miscellaneous Expenses
(127.00)
House Expenses and
Depreciation
(3,704.00)
(4,060.00)
Safe Deposit Expenses
(200.00)
Office Expenses
(195.00)
NET LOSS FROM
GLASS ACTIVITIES
($9,681.00)
($5,585.00)
($6,932.00)
($6,653.00)
1975
1976
1977
1978
SALES
Books
$ 580.00
$ 430.00
not available
Novelties
970.00
1,122.00
not available
Gross Sales
$1,550.00
$1,552.00
$1,257.00
$1,425.00
Cost of Goods Sold
(1,100.00)
(561.00)
(1,116.00)
(1,327.00)
Gross Profit
$ 450.00
$ 991.00
$ 141.00
$ 98.00
Other Expenses
Dues and Subscriptions
(470.00)
(617.00)
(195.00)
(340.00)
Advertising
(534.00)
(385.00)
(245.00)
(300.00)
Postage
(701.00)
(165.00)
(455.00)
(150.00)
Photographic Materials
& Supplies
(323.00)
(299.00)
(195.00)
(150.00)
Automobile Expenses
(600.00)
(600.00)
(680.00)
(680.00)
Travel
(898.00)
(922.00)
(478.00)
(512.00)
Miscellaneous Expenses
House Expenses and
Depreciation
(5,491.00)
(5,451.00)
(5,447.00)
(6,312.00)
Safe Deposit Expenses
(200.00)
(200.00)
(200.00)
(200.00)
Office Expenses
(175.00)
(580.00)
(326.00)
(95.00)
NET LOSS FROM
GLASS ACTIVITIES
($8,942.00)
($8,228.00)
($8,080.00)
($8,641.00)
Expenditures *381 by Mrs. Stanley in the amounts of $373.45 in 1975 and $546.42 in 1976 for subscriptions to "Time Magazine," "Newsweek," "Reader's Digest," "Better Homes and Gardens," "Crafts N' Things, " the "Buffalo Evening News," and the "Courier Express" and for the purchase of books were incurred for personal, and not business, purposes. OPINION The first issue is whether Mrs. Stanley's activities with respect to glass novelties during the years 1975 and 1976 were engaged in for profit. Section 183(a)[2] provides that "if [an] activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section." Section 183(b)(1) allows those deductions which would be allowable without regard to whether or not such activity is engaged in for profit. Section 183(b)(2) provides that deductions which would be allowable only if such activity is engaged in for profit shall be allowed "but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1)." Section 183(c) defines an "activity not engaged in for profit" as "any activity other than one *382 with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." The test for determining whether an activity is engaged in for profit is whether the individual engaged in the activity with the primary purpose and intention of making a profit. The taxpayer must have a bona fide expectation of realizing a profit, although such expectation need not be reasonable. Section 1.183-2(a), Income Tax Regs.; Engdahl v. Commissioner,72 T.C. 659, 666 (1979); Golanty v. Commissioner,72 T.C. 411, 425-426 (1979), on appeal (9th Cir., Aug. 31, 1979). Whether petitioners had the requisite intention is a question of fact to be determined on the basis of all the facts and circumstances. Allen v. Commissioner,72 T.C. 28, 34 (1979); Dunn v. Commissioner,70 T.C. 715, 720 (1978), affd. without published opinion 607 F.2d 995 (2d Cir. 1979). The burden of proof is on the petitioners, Golanty v. Commissioner,supra at 426; Boyer v. Commissioner,69 T.C. 521, 537 (1977), on appeal (7th Cir., *383 July 7, 1978), with greater weight given to objective facts than to the petitioners' mere statement of their intent. Section 1.183-2(a), Income Tax Regs.; Engdahl v. Commissioner,supra at 666; Churchman v. Commissioner,68 T.C. 696, 701 (1977). See H. Rept. 91-413 (Part 1), 1969-3 C.B. 200, 245; S. Rept. 91-552, 1969-3 C.B. 423, 490. No one factor is conclusive and thus we do not reach our decision herein by merely counting the factors enumerated in section 1.183-2(b), Income Tax Regs., which support each party's position. Dunn v. Commissioner,supra at 720. Petitioner's glass novelty activities in 1975 and 1976 included acquisition of glass novelties for her collection; disposition through sale or trade of some glass novelties; and sale of copies of the book she had written in 1971, "A Century of Glass Toys," which described and illustrated her collection. [3] *384 Petitioners argue that Mrs. Stanley acquired glass novelties for investment purposes and that she published her book "A Century of Glass Toys" to enhance the marketability of her glass novelty collection as well as to make a profit from sales of the book itself. We note at the outset that we do not doubt Mrs. Stanley's testimony that she hoped or expected that her glass novelties would appreciate in value over time. Moreover, we acknowledge that an expectation that the assets used in an activity will appreciate in value is a relevant factor in determining whether such activity is engaged in for profit, even where current operations yield no profit. Section 1.183-2(b)(4), Income Tax Regs.; Allen v. Commissioner,72 T.C. at 36. However, a potential for appreciation is inherent in many, if not most, of the items which have traditionally been collected as a hobby, e.g., stamps, coins, works of art for the pleasure afforded by the acquisition and possession of the collection itself. The mere fact that a collector is aware that the value of fis collection may increase does not mean that he is primarily motivated by an expectation of profit rather than the personal satisfaction derived from pursuing a hobby and a hobby is not thereby converted into an activity engaged in for *385 profit. Thus, in Wrightsman v. United States, 192 Ct. Cl. 722, 428 F.2d 1316 (1970), the Court of Claims held that the taxpayers could not deduct, under section 212, expenses connected with their art collection, although they had an investment motive in acquiring it, since their primary purpose in collecting works of art was not investment, but personal pleasure. Although that case was decided under section 212 prior to the enactment of section 183, the same standard of "primary purpose" is relevant under section 183. See section 1.183-2(a), Income Tax Regs.; Jasionowski v. Commissioner, 66 T.C. 312, 321 (1976). [4] *386 After carefully reviewing all of the evidence before us, we are not persuaded that petitioners have carried their burden of proof that Mrs. Stanley collected glass novelties and wrote about her collection primarily for the production of income and not primarily for the personal satisfaction it afforded her. In the words of the Court of Claims in Wrightsman v. United States, supra, they have not established that investment was "the most prominent purpose" for her acquisition and holding of the glass novelties. See 192 Ct. Cl. at 732, 428 F.2d at 1322. The indications of personal satisfaction are strong. First, we have petitioners' stipulation that Mrs. Stanley derived pleasure from her activities with glass novelties, along with the sense of her great enthusiasm for, and pride in, her collection which her testimony as a witness in this case reflected. Second, we think that the evidence clearly indicates that she initially undertook glass novelty collecting as a hobby. She started her collection when she had spare time because three out of her four children had left home and she was not yet employed other than as a housewife. The choice of glass novelty collecting as an activity to occupy her time *387 was dictated by an enjoyment of, and interest in, antiques which had been instilled in her as a child by her parents and relatives who had been antique collectors. She decorated her home with fine furniture, antiques, and works of art. Moreover, the fact that petitioners did not report profits or losses from glass collecting on their income tax returns during the first two years in which Mrs. Stanley was building her collection suggests that she regarded collecting as a hobby at that time and did not undertake such activities primarily for investment purposes. [5] Third, the display of her collection throughout petitioners' home indicates that Mrs. Stanley held it for the aesthetic pleasure she received from it. Compare Tyler v. Commissioner, a Memorandum Opinion *388 of this Court dated March 6, 1947, footnote 4, supra. We do not accpet petitioners' explanation that such an arrangement was necessary for the collection to be accessible for viewing by potential purchasers or for Mrs. Stanley's work with the collection. The record shows that people came to view her collection very infrequently and does not show that Mrs. Stanley was involved in any project in 1975 and 1976 (e.g., the preparation of a supplement to her book) which might have required her collection to be constantly in view (rather than stored) in order to facilitate the implementation thereof. In any event, we doubt that such activities would require display of glass novelties throughout the house, especially in such rooms as the bedroom or kitchen. The fact that a taxpayer derives personal pleasure from engaging in an activity does not alone determine that the activity is not engaged in for profit, if other factors indicative of a profit motive are present. Section 1.183-2(b)(9), Income Tax Regs. See Jackson v. Commissioner, 59 T.C. 312, 317 (1972). In this case, however, in addition to the above-mentioned elements of personal pleasure, several other factors point to the conclusion *389 that Mrs. Stanley did not engage in her glass novelty activities for profit. Where, as here, a taxpayer's main argument is that she was acquiring and holding assets for investment, rather than engaging in the trade or business of selling such assets (i.e., that her expenses are deductible under section 212, rather than section 162), it may well be that a consistent history of losses in the years prior to disposition of the assets in question should not be given as much weight in a determination of whether she has the requisite profit motive. See and compare Golanty v. Commissioner, 72 T.C. at 426, and section 1.183-2(b)(4), Income Tax Regs., with section 1.183-2(b)(6), Income Tax Regs. Nevertheless, we should not ignore the fact that petitioners did incur substantial losses from Mrs. Stanley's glass novelty activities in every year between 1971 and 1976 (as well as in years subsequent to the taxable years in question), and the record before us leaves us unpersuaded that the potential for appreciation in value of Mrs. Stanley's collection was sufficiently great to support a finding of bona fide expectation that her activity might ultimately be converted into a profitable one by recouping *390 through sales the losses experienced in prior years. Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967). The value of Mrs. Stanley's collection was never independently appraised.The only evidence as to the appreciation was Mrs. Stanley's own testimony of a general nature to the effect that glass novelties are, and have been since she began her collection, increasing in value; her statement that in 1979 she sold an item costing $120 for $600; and the values at which she insured her collection. In 1975 and 1976 and again in 1979, Mrs. Stanley reinsured the examples of glass novelties included in "A Century of Glass Toys," at $89,861, double their cost of $44,935. By the end of 1976, Mrs. Stanley had reported net losses in excess of $46,000 and by the end of 1978 had reported net losses of almost $63,000. Even if we accept the value set by Mrs. Stanley for insurance purposes as an accurate representation of the appreciation in the value of those items, we have no reason to assume that the other examples in her collection not included in her book, either because they were acquired too late or because they were less unusual and interesting, had appreciated *391 sufficiently to account for the excess of losses over assumed appreciation. In any case, although Mrs. Stanley testified that eventually she would sell her collection, she did not at the time of trial have any plans to do so, and we are not persuaded that, during the taxable years at issue, she had a definite intention of disposing of her permanent collection at any future time. Although she testified that she acquired rare examples which were more marketable, virtually all those engaged in a hobby of collecting similarly seek to acquire rare items, not primarily for potential profit, but for a value placed on the rarity itself. During the years 1970 through 1978, she made very few sales (see Findings of Fact, supra at p. 6, and compare with the number of items in her collection, Findings of Fact, supra at p.6). These sales were not induced by a consideration of what items might be most profitably sold at what time, but were, rather, a means of disposing of items duplicative of others in the collection. She was not, during those years, offering for sale items from her permanent collection. With regard to Mrs. Stanley's writing and publishing endeavors, we find unconvincing the argument *392 that they were undertaken as a form of advertising, intended to enhance her reputation as a collector and thereby increase the marketability of her collection. She was not offering the items illustrated in the book or other pieces in her permanent collection for sale in the foreseeable future. Nor do we believe that she published her book for the primary purpose of making a profit from its sale. Although she had corresponded with Mr. Matthews, the author of two books on a similar subject, in regard to one of his books, she did not make any inquiries as to how well his, or any other, book had done commercially. [6] In fact, Mr. Matthews had published many fewer copies than the 6,000 Mrs. Stanley planned to publish and had not sold all of them. Additionally, the numerous revisions Mrs. Stanley required during the preparation of her book show more of an interest in displaying her collection and providing information for other collectors than a regard for cost and marketability.
Finally, we note that, even if she had originally had an expectation of profit in 1971 and 1972 when plans for publishing her book were developed, any such expectation *393 had long since disappeared by 1975 and 1976, the taxable years before us. At that point in time, her gross sales of the books were negligible and her activities in this regard appear to constitute, at best, a salvage operation. [7]
Although Mrs. Stanley kept some records of her activities in a businesslike manner, see section 1.183-2(b)(1), Income Tax Regs. , "the trappings of a business" are insufficient to demonstrate that an activity is carried on for profit. Bessenyey v. Commissioner, 45 T.C. at 274, and, in any event, maintenance of records of acquisitions and dispositions is as consistent with a hobby as it is with a business. See Golanty v. Commissioner, 72 T.C. at 430. Moreover, she did not keep a separate bank account for receipts from, or any book of account for the expenses incurred in, her glass novelty activities. Finally, we are not persuaded *394 that the substantial amount of time which Mrs. Stanley devoted to her collection is reflective of a profit motive rather than the avidity of a collector in pursuing her avocation. Nor do we think that the unusual size and cost of Mrs. Stanley's collection (which distinguishes it from the average hobbyist's collection) should lead us to the conclusion that her collection was an investment and not a hobby. Mrs. Stanley had more resources at her disposal than most hobby enthusiasts. See Findings of Fact, p. 4, supra. In fact, Mrs. Stanley spent 30 to 35 hours per week serving as chief executive of Stanley Steel Service Corporation and petitioners had substantial earned income therefrom as well as from dividends and interest. Thus, Mrs. Stanley could engage in acquiring glass novelties without being in any way dependent for support on producing income through such activity. See section 1.183-2(b)(8), Income Tax Regs. Furthermore, the tax benefit from offsetting the losses from the glass novelty activities against other income reduced the actual out-of-pocket expenses incurred by Mrs. Stanley in those activities. See Golanty v. Commissioner, supra at 429. In sum, we are unable to *395 conclude that the weight of the evidence shows that Mrs. Stanley's glass novelty activities were engaged in for profit within the meaning of section 183. Wrightsman v. United States,supra.
The record clearly indicates, however, that petitioners had sufficient expenses in connection with Mrs. Stanley's glass novelty activities to offset the gross income therefrom. [8] In view of our holding that such activities were not engaged in for profit within the meaning of that section, we find it unnecessary to consider respondent's alternative argument that, in any event, we should disallow any deduction for depreciation and for certain household maintenance expenses on the ground that they were personal in nature. Decision will be entered for respondent. Footnotes
1. The Court made a finding at trial that certain book and subscription expenses were, in any event, personal. See Findings of Fact, p.17, infra. We note that this issue was raised by respondent only as an alternative if issue (1), supra↩, should be resolved in petitioners' favor. In view of our decision herein, we find it unnecessary further to discuss these expenses.
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect in the taxable years at issue, unless otherwise specified.↩
3. The parties have stipulated that Mrs. Stanley's endeavors in collecting glass novelties and in writing and publishing in regard to glass novelties constitute a single integrated activity. See section 1.183-1(d)(1), Income Tax Regs.↩
4. See also Tyler v. Commissioner, a Memorandum Opinion of this Court dated March 6, 1947. In that case, the Court applied the same standard of primary purpose, but held that the taxpayer's "prime" purpose in collecting stamps was investment, since, although he derived pleasure from collecting, he did not seek to acquire any particular varieties and bought only those recommended to him as an investment by an expert; stamps; and he did not regularly display his stamps. See Wrightsman v. United States, 192 Ct. Cl. 722, 732-733, 428 F.2d 1316, 1322↩ (1970).
5. Of course, an activity could be begun as a hobby and later be converted into an activity engaged in for profit, but we do not see any evidence that such a change in the nature of Mrs. Stanley's activities occurred during the period relevant herein and the thrust of petitioners' argument appears to be that Mrs. Stanley began collecting glass as an investment and maintained that purpose throughout the taxable years in question.↩
6. See Hires v. Commissioner, T.C. Memo. 1980-172↩.
7. The record shows gross income realized on the sale of books in some years, but is inadequate to determine whether in any year the sale of books alone resulted in net income. In any event, the parties have stipulated that the sale of books was an integrated part of Mrs. Stanley's glass novelty activities. See footnote 3, supra↩.
8. Respondent has raised no question as to the order of deduction of these expenses. Under section 1.183-1(b)(1), Income Tax Regs., expenses which do not affect the basis of an asset are deductible prior to the allowance of any deduction, such as depreciation, affecting the basis of an asset. But see, S. Rept. 91-552, 1969-3 C.B. 423↩, 490.